**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **BOR-TYNG SHEEN**, *et al.*,<br><br>          Plaintiffs,<br><br>          v.<br><br>**UNITED STATES**,<br><br>          Defendant. | Case No. 24-cv-2400 (TNM) |

**<u>MEMORANDUM OPINION</u>**

Plaintiffs are residents of Taiwan who seek to address their alleged statelessness.  But the D.C. Circuit has previously held that determining the sovereignty of Taiwan presents a non-justiciable political question.  *See Lin v. United States*, 561 F.3d 502, 508 (D.C. Cir. 2009). Accordingly, the political question doctrine bars this Court from considering Plaintiffs' claim. The Complaint must be dismissed for lack of subject matter jurisdiction.

**I.**

A brief overview of Taiwanese sovereignty will situate Plaintiffs' claims.  In 1895, at the end of the Sino-Japanese War, China relinquished Taiwan to Japan.  *Lin*, 561 F.3d at 504.  Fifty years later, after Japan's defeat in World War II, it surrendered Taiwan to the allied forces.  *Id.* Soon after, the United States signed a mutual defense treaty with Taiwan that recognized its island government, the Republic of China, as the true government of all of China; that treaty promised support in the event of a large-scale conflict with mainland Communist China, also known as the People's Republic of China.  *Id.*  In the ensuing decades, the United States' diplomatic relations with mainland Communist China improved and its posture on Taiwan's sovereignty shifted.  *Id.*  In 1979, President Carter recognized the Communist People's Republic

of China as the sole government of China, withdrawing recognition from the Taiwanese Republic of China. *Id.*

The shift in policy led Congress to enact the Taiwan Relations Act of 1979 to "spell out the United States' new, unofficial relationship with the people on Taiwan." *Id.* at 504; 22 U.S.C. § 3301. In the decades since, there has been "strategic ambiguity" with respect to sovereignty over Taiwan. *Lin*, 561 F.3d at 505.

## II.

A Rule 12(b)(1) motion to dismiss "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). To survive, Plaintiffs "must establish the Court's jurisdiction over [their] claims." *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 414 (D.D.C. 2020). When assessing Plaintiffs' showing, the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting [P]laintiff[s] the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

The Court must dismiss any claim over which it does not have subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). "[A] dismissal for want of subject-matter jurisdiction can only be without prejudice[.]" *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020).

The Court generously construes Plaintiffs' filings because they are *pro se*. *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). Such litigants' filings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). But this "special solicitude is only a rule of construction. It does not relieve a *pro se* litigant" of his applicable legal burdens. *Jean-Baptiste v. Booz Allen Hamilton, Inc.*, 2024 WL 3551941, at *2 (D.D.C. July 26, 2024).

### III.

The United States' "strategic ambiguity" toward Taiwanese sovereignty cannot be resolved by the judiciary because it is a political question. "The political question doctrine is one aspect of the concept of justiciability, which expresses the jurisdictional limitations imposed on the federal courts by the case or controversy requirement of the Article III of the Constitution." *Bancoult v. McNamara*, 445 F.3d 427, 432 (D.C. Cir. 2006) (cleaned up).

The D.C. Circuit has already held that determining the sovereignty of Taiwan presents a non-justiciable political question. *Lin*, 561 F.3d at 508. In *Lin*, Taiwanese appellants wanted passports and all related rights and privileges of U.S. nationals. *Id.* at 505. But the Circuit held that "[d]etermining appellants' nationality would require us to . . . resolve a question the Executive Branch intentionally left unanswered for over sixty years: who exercises sovereignty over Taiwan. This we cannot do." *Id.* at 504–05.

Here, Plaintiffs want the same basic relief: to determine the status and rights of residents of Taiwan. Though they do not claim American citizenship as the *Lin* appellants did, Plaintiffs still want the United States to address their alleged statelessness. Compl., ECF No. 1, at 3–4, 25–28. Thus, the dispositive question remains the same. *Lin* squarely controls.

Plaintiffs retort that various American treaties already address their statelessness, so the President should follow through on promises made. Pl. Opp. Mot. Dismiss, ECF No. 6, at 1–5. But the D.C. Circuit rejected this argument in *Lin*: The President had made no promises about recognizing Taiwanese sovereignty through the specific treaties that the Plaintiffs invoke. *Compare Lin*, 561 F.3d at 505 (listing the 1950s peace treaty with Japan, the mutual defense treaty with Taiwan, and the 1970s Taiwan Relations Act) *with* Pl. Opp. Mot. Dismiss at 5–6 (listing the same events). After listing all the same treaties, the D.C. Circuit concluded that the

Executive had not determined Taiwanese sovereignty through any of those documents. "Once the Executive determines Taiwan's sovereign," the D.C. Circuit stated, "we can decide Appellants' resulting status and concomitant rights expeditiously." *Lin*, 561 F.3d at 505. "But for many years," "the Executive ha[d] gone out of its way to avoid making that determination." *Id.* Plaintiffs have raised no new treaties or documents signed since *Lin* that change this calculus. In any event, Plaintiffs' argument about what the President should do is best made to him, not this Court.

The only newer document Plaintiffs cite is a United Nations publication that allegedly bans statelessness. *See United Nations Refugee Agency*, "Global Action Plan to End Statelessness 2.0."[1] This document, Plaintiffs say, requires the United States to act. Pl. Opp. Mot. Dismiss at 6. But this publication is merely hortatory. It is a United Nations policy *encouraging* member states to end statelessness by 2024 through voluntary action. *See* Global Action Plan, *passim*. More, the policy document does not change the fundamental factual premise of *Lin*, which was that the United States Government has not taken a position on the sovereignty of Taiwan. 561 F.3d 502 at 508. The document does not even mention Taiwan. *See* Global Action Plan, *passim*. So it is both non-binding and non-specific. It does not commit the United States to any particular action vis-à-vis Taiwan.

Beyond the Plaintiffs' cited authorities, the United States does not appear to have changed its "strategic ambiguity" toward the status of the Taiwanese people since *Lin* in 2009. *See Lin v. United States*, 690 Fed. App'x 7, 8 n.1 (D.C. Cir. 2017); *cf.* Susan M. Gordon et al., *U.S.-Taiwan Relations in a New Era Responding to a More Assertive China*, Council on Foreign Relations, at 10 (June 2023) (recommending that the United States "maintain its One

---

[1] https://www.refworld.org/policy/strategy/unhcr/2024/en/148761 (last visited June 10, 2025).

China policy, recognizing the PRC as the sole legal government of China and eschewing formal diplomatic relations with Taiwan").[2]  So no external factors have undermined *Lin*'s precedential hold on Plaintiffs' claims.

## IV.

In short, the political question doctrine bars consideration of Plaintiffs' claims, which would require this Court to determine the rights and status of the Taiwanese people.  Therefore, the Court must dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction without prejudice.  *N. Am. Butterfly Ass'n*, 977 F.3d at 1253 (requiring dismissals under Rule 12(b)(1) to be without prejudice).  Defendant asks to dismiss with prejudice, so the motion to dismiss will be granted only in part.  An appropriate Order will issue today.[3]

Dated: July 7, 2025

                                                        _____
                                                         TREVOR N. McFADDEN, U.S.D.J.

---

[2] https://www.cfr.org/task-force-report/us-taiwan-relations-in-a-new-era.

[3] Plaintiffs' [8] Motion for Leave to File Surreply will also be denied.  The Defendant's reply contained no new arguments but rather responses to the opposition.  Generally, the Court allows a surreply "only to address new matters raised in a reply, to which a party would otherwise be unable to respond." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276 (D.D.C. 2002).  Even if the Court did consider Plaintiffs' proposed surreply, it would not save the Complaint from dismissal.